# NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000867**
**08-NOV-2023**
**08:46 AM**
**Dkt. 318 MO**

NO. CAAP-17-0000867

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

HENRY CHANG WO, JR., Appellant-Appellee, v.
BOARD OF LAND AND NATURAL RESOURCES,
THE DEPARTMENT OF LAND AND NATURAL RESOURCES,
DAWN N.S. CHANG, IN HER OFFICIAL CAPACITY AS CHAIRPERSON OF
THE BOARD OF LAND AND NATURAL RESOURCES,[1]
HASEKO (EWA), INC., CITY AND COUNTY OF HONOLULU
DEPARTMENT OF PLANNING AND PERMITTING,
DEPARTMENT OF HAWAIIAN HOME LANDS, and
UNIVERSITY OF HAWAIʻI, Appellees-Appellees.

_____

KUAʻĀINA ULU ʻAUAMO,
Party in Interest-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 14-1-1373)

MEMORANDUM OPINION
(By: McCullen, Presiding Judge, Circuit Judge Castagnetti and
Circuit Judge Wong, in place of Ginoza, Chief Judge, and
Leonard, Hiraoka, Wadsworth, Nakasone,
and Guidry, JJ., recused.)

---

[1] Pursuant to Hawaiʻi Rules of Evidence Rule 201 and Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 43(c)(1), we take judicial notice that Dawn N.S. Chang is the current Chairperson of the Board of Land and Natural Resources and she is automatically substituted as an Appellee-Appellee in place of Suzanne Case.

Party in Interest-Appellant Kuaʻāina Ulu ʻAuamo (**KUA**) appeals from the Circuit Court of the First Circuit's (1) October 3, 2017 order granting Appellee-Appellee University of Hawaii's (**UH**) motion to dismiss deceased Appellant-Appellee Henry Chang Wo, Jr.'s (**Wo**) appeal to the circuit court and (2) November 7, 2017 Final Judgment.[2]

The controversy in the case underlying this appeal concerns whether a seaside berm that is naturally six to eight feet above mean sea level should be lowered to four feet. The purpose of lowering the berm is to prevent flooding of nearby urban development by allowing more runoff into our ocean.

Wo requested a contested case on the matter at a Board of Land and Natural Resources (**Board or BLNR**) meeting in March 2012.[3] While litigating that matter before the Board, Wo passed away and the Board allowed KUA to substitute in Wo's place. That substitution was the basis for the circuit court's dismissal of the appeal in this case, and is at the center of this secondary appeal. We vacate and remand.

---

[2] The Honorable Keith K. Hiraoka presided.

[3] Michael Kumukauoha Lee also requested a contested case, and was a party to the proceedings, but later withdrew from the case.

## I.    BACKGROUND

### A.    BLNR - Application for a Use Permit

For a brief background, "Kaloʻi Gulch is a natural drainage for about 7488 acres, beginning in lower slopes of the [Waiʻanae] Mountains mauka of the H-1 Freeway ending at the Kaloʻi Gulch discharge site at the eastern [sic] of Oneʻula Beach Park."  "Urban development has caused, and will continue to cause, stormwater runoff greatly exceeding that which occurred when the [ʻEwa] Plain was planted in sugar cane."  This development "includes [ʻEwa] Villages, UH West [Oʻahu] Campus, Ocean Pointe, East Kapolei, Gentry [ʻEwa], and other developments."

In August 2011, SSFM International, Inc., as agent for Haseko, Inc. (**Haseko**); the City and County of Honolulu, Department of Planning and Permitting (**Honolulu Planning Department**); the Department of Hawaiian Homelands; and UH (collectively, **Applicants**) applied for a Conservation District Use Permit (**Use Permit**) "to construct an ocean outlet for storm water discharge on State-owned land in the Conservation District as part of the Kaloʻi Gulch Drainage Improvements . . . ."[4]

---

[4]  BLNR denied the same proposed construction in 2008 because "Haseko was the sole applicant and could not answer for the other land owners as to how or to what extent their developments would be constrained without the ocean outlet."

Applicants requested the sand berm be lowered two to four feet, across the 500 foot width of the channel.

Applicants' 2011 application was supported by an environmental impact statement dated December 2005.

At a March 2012 BLNR meeting, Wo orally requested a contested case on the application for the Use Permit, which was granted.

In his written petition for a contested case, Wo stated he and "his ancestors have traditionally and customarily gathered limu and other marine life from the area" and his "interests stem from his (a) traditional and customary practices; (b) recreational interests; (c) cultural interests; and (d) environmental interests." Wo asserted that Applicants failed to meet the criteria for obtaining a Use Permit under the "public trust doctrine, Native Hawaiian rights, Hawaiʻi State Constitution Articles XI § 1 and § 9, and XII § 4 and § 7, section 5(f) of the Admissions Act; and [Hawaiʻi Revised Statutes (**HRS**)] Chapters 7 and 205A . . . ."[5]

---

[5] **Article XI, section 1** of the Hawaiʻi Constitution addresses conservation of resources, and provides as follows:

> For the benefit of present and future generations, the State and its political subdivisions shall conserve and protect Hawaii's natural beauty and all natural resources, including land, water, air, minerals and energy sources, and shall promote the development and utilization of these

(continued . . .)

4

(. . . continued)

> resources in a manner consistent with their conservation and in furtherance of the self-sufficiency of the State.
>
> All public natural resources are held in trust by the State for the benefit of the people.

**Article XI**, **section 9** of the Hawaiʻi Constitution addresses environmental rights, and provides as follows:

> Each person has the right to a clean and healthful environment, as defined by laws relating to environmental quality, including control of pollution and conservation, protection and enhancement of natural resources. Any person may enforce this right against any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law.

**Article XII**, **section 4** of the Hawaiʻi Constitution is titled "Public Trust," and provides as follows:

> The lands granted to the State of [Hawaiʻi] by Section 5(b) of the Admission Act and pursuant to Article XVI, Section 7, of the State Constitution, excluding therefrom lands defined as "available lands" by Section 203 of the Hawaiian Homes Commission Act, 1920, as amended, shall be held by the State as a public trust for native Hawaiians and the general public.

**Article XII**, **section 7** of the Hawaiʻi Constitution addresses traditional and customary rights, and provides as follows:

> The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupuaʻa tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights.

**Section 5(f) of the Admissions Act** provides in pertinent part:

> The lands granted to the State of [Hawaiʻi] by subsection (b) of this section and public lands retained by the United States under subsections (c) and (d) and later conveyed to the State under subsection (e), together with the proceeds from the sale or other disposition of any such lands and the income therefrom, shall be held by said State as a public trust for the support of the public schools and other public educational institutions, for the betterment of the conditions of native Hawaiians, as defined in the Hawaiian Homes Commission Act, 1920, as amended, for the development of farm and home ownership on as widespread a basis as possible for the making of public improvements, and for the provision of lands for public use.

In May 2013, before the evidentiary hearing began, the Hearing Officer found Wo "ha[d] standing based on Ka [Paʻakai]."[6] In June 2014, the Board issued its decision and order approving Applicants' Use Permit for the Kaloʻi Gulch Drainage Improvements.

**B. Circuit Court - Appeal**

Wo appealed to the circuit court. With the Honorable Rhonda A. Nishimura presiding, Wo raised the issue of whether a supplemental environmental impact statement (**Supplemental EIS**) was warranted.

Judge Nishimura determined Wo properly raised the Supplemental EIS issue below, but the Hearing Officer did not address it. She then ordered the case be remanded to address the Supplemental EIS issue and set the parameters for remand:

> **[Judge Nishimura:]** Now, in looking under [Hawaiʻi Administrative Rules (**HAR**) §] 11-200-27, to the extent that they have properly raised it, in looking at the [Findings of Fact (**FOF**), Conclusions of Law (**COL**)] and order, the [Supplemental EIS] has not been addressed by the hearings officer. So to that extent the Court will remand it with instructions to address the issue of [a Supplemental EIS].

---

[6] In Ka Paʻakai O Ka ʻĀina v. Land Use Comm'n, State of Hawaiʻi, 94 Hawaiʻi 31, 7 P.3d 1068 (2000), the Hawaiʻi Supreme Court addressed whether the circuit court lacked jurisdiction to consider the appeals of Ka Paʻakai and Plan to Protect. The supreme court held that the parties were "persons aggrieved within the meaning of HRS § 91-14[.]" Id. at 44, 7 P.3d at 1081 (cleaned up). The court explained "[w]ith regard to native Hawaiian standing, this court has stressed that the rights of native Hawaiians are a matter of great public concern in Hawaiʻi." Id. at 42, 7 P.3d at 1079 (citation, internal quotation marks, and brackets omitted). And, "where the interests at stake are in the realm of environmental concerns, we have not been inclined to foreclose challenges to administrative determinations through restrictive applications of standing requirements." Id. (cleaned up).

So it's up to the agency to address as to whether or not supplemental statement is warranted.

The Court will not reopen it to take in new evidence, because I believe the evidence -- substantial evidence has been presented both for and against the [Use Permit] with respect to, for example, the monk seal, the berm, the pollution, the limu. All of that have been raised during the context of the contested case proceeding. So for the Board to determine, based upon the evidence that have been presented, whether or not [a Supplemental EIS] is warranted. So therefore, to remand it back to the Board to make the determination as to whether or not [a Supplemental EIS] is warranted, based upon the evidence presented through the contested case proceeding.

So the Court is not going to reopen it for to taking in new evidence, but for the Board to determine whether or not one is warranted. Once that determination is made, then you may be able -- you may be probably coming back here to appeal that decision one way or the other. Because either the Board is going to say it's warranted, or it's not warranted, based on the evidence that was presented.

So the Court envisions to remand it just for that specific purpose. Not to reopen. And to allow the Board to perhaps file a supplemental to what has been issued, to address the [Supplemental EIS].

(Formatting altered and emphases added.) Wo's counsel, David Kimo Frankel (**Mr. Frankel**), then asked Judge Nishimura to clarify the stay and whether the circuit court had jurisdiction:

[**Mr. Frankel:**] So I would like to ask that the permit be stayed until we come back to you. You know, for example, if they say -- if they say [a Supplemental EIS] needs to be done, then to me the permit actually needs to be vacated and we have to go. But if they say the opposite, that no [Supplemental EIS] needs to be done, we want to come before you to argue. But we don't want them to start construction before we have a chance to argue before you. So just procedurally we need to know, do you still have jurisdiction?

[**Judge Nishimura:**] I would think so.

[**Mr. Frankel:**] Okay. So the stay --

[**Judge Nishimura:**] Because I'm remanding it. I'm not affirming, vacating or reversing. I'm remanding it.

[**Mr. Frankel:**] Okay. So the stay will continue until you have an opportunity to make another decision.

> [Judge Nishimura:] Right. Because it depends upon what they -- what's determined regarding the [Supplemental EIS]. You know, they may take a look and -- look at the evidence from a different perspective, based upon the -- under the HAR provision.

(Formatting altered and emphases added.)

In her December 30, 2014 written order, Judge Nishimura explained that the Supplemental EIS issue "was timely raised during the course of the contested case hearing" and the Board "did not address this issue in its decision." The written order remanded the case to the Board, ordered the Board to determine whether a Supplemental EIS was necessary based on the existing evidence, and clarified that the circuit court retained jurisdiction over the case:

1. This Court remands this case to the [Board] to determine whether a [Supplemental EIS] should be prepared for the Kaloʻi Gulch drainage project.

2. On remand, the contested case hearing shall not be re-opened and no new evidence shall be submitted. Rather, based on the evidence that has already been submitted, the [Board] shall determine, after hearing from the parties, whether a [Supplemental EIS] is necessary and shall provide its reasoning in the form of supplemental written findings, conclusions, decision and order.

3. The permit granted by the [Board] is stayed until this Court has an opportunity to review the [Board's] Findings of Fact, Conclusions of Law, and Decision and Order Dated June 13, 2014 after the Board renders a decision on the [Supplemental EIS] issue. Appellees may not engage in any land alteration or construction activity pursuant to conservation district use permit OA-3604 for the Kaloʻi Gulch drainage project until this stay is lifted by this Court.

4.   This court retains jurisdiction over this case, orders the parties to inform this Court of the [Board's] decision on remand, and awaits the filing of any appropriate motions.

(Emphases added.)

## C.   BLNR - Remand

On remand, the Board held oral arguments in March 2015.  With several new board members, the Board requested to visit the site, and the parties agreed they should request permission from Judge Nishimura.  Judge Nishimura granted permission, and BLNR visited the site.  Pending BLNR's decision, the following occurred:

### 1.   BLNR - Motion to Substitute

On September 17, 2015, Wo moved the Board to expedite its decision on whether a Supplemental EIS was required and to promptly order substitution of KUA in his place.  In Wo's affidavit attached to his motion, Wo explained he was "diagnosed with mesothelioma, which is incurable."  He stated he wished to "assign/transfer/bequeath my interest in this proceeding to" KUA, should something happen to him before the Board rendered a decision.  He also explained he was working closely with KUA, to pass on his knowledge and skills to a new generation, and with KUA's executive director, Kevin Chang (**Chang**), to perpetuate the tradition of gathering limu.

Also attached to the motion was a declaration by Chang, explaining that "KUA is an innovative, community-based

9

initiative for protecting, restoring and caring for Hawaiʻi."
Chang also explained Wo was "a founding kupuna of KUA" and
helped organize a limu hui.  Chang stated "KUA empowers
communities to improve their quality of life through caring for
their biocultural (natural and cultural) heritage" and its
"vision is ʻāina momona - abundant and healthy ecological systems
in Hawaiʻi that contribute to community well-being."

Chang noted "KUA, through staff and volunteers,
attended all of the contested case hearing" and he "was in
attendance for almost the entire proceeding."  Chang stated Wo
asked KUA to "grab the ʻauamo for him; that we step into his
tabis," and "[w]e are willing to substitute" in Wo's place.

Wo passed away two days after the motion to expedite
and substitute was filed.

**2.  Circuit Court - Suggestion of Death**

On **September 25, 2015,** six days after Wo's death, UH
filed a "Suggestion of Death Upon the Record Under" Hawaiʻi Rules
of Civil Procedure (**HRCP**) Rule 25(a)(1).[7]

---

[7]  **HRCP Rule 25(a)(1)** provides:

> If a party dies and the claim is not thereby
> extinguished, the court may order substitution of the
> proper parties.  <u>The motion for substitution may be made by
> any party</u> or by the successors or representatives of the
> deceased party and, together with the notice hearing, shall
> be served on the parties as provided in Rule 5 and upon
> persons not parties in the manner provided in Rule 4 for

(continued . . .)

10

Three days later, Judge Nishimura notified the parties that a status conference would be held on October 2, 2015.

According to the October 2, 2015 circuit court minutes, the status conference with Judge Nishimura was "IN CHAMBERS -- OFF RECORD." The minutes also note that present were "David Frankel/For Appellant Wo[,] Linda Chow/For BLNR[,] Don Kitaoka/For City and County[,] Lisa Munger/For UH[,] Yvonne Izu/For Haseko[, and] Craig Iha/for DLNR." (Formatting altered.) The minutes do not provide information on what transpired during the conference, and do not indicate Judge Nishimura entered an order.

### 3. BLNR - Motion to Substitute

Back before the Board, on October 23, 2015, Applicants filed a "Joint Memorandum in Opposition to Motion to Expedite and Substitute." Applicants argued that the Board lacked jurisdiction to substitute KUA because the substitution was "not within the scope of the Remand Order." Applicants also argued

_____

(. . . continued)

> the service of a summons, and may be served in any judicial district. <u>Unless the motion for substitution is made not later than 120 days after the death is suggested</u> upon the record by service of a statement of the fact of the death as provided herein or the service of the motion, <u>the action shall be dismissed as to the deceased party</u>.

(Emphases added.) See HRCP Rule 81(e) (providing that the HRCP "shall apply to any proceedings in a circuit court pursuant to appeal to the circuit court from a governmental official or body (other than a court), except as otherwise provided in Rule 72").

11

that KUA was not the proper party to substitute because HRCP Rule 25 controls and not HAR § 13-1-19 (Amended 2009) and, thus, "substitution of parties is allowed when the rights that resided in the original party have been transferred to the substituted party."

Four days later, Wo and KUA filed a reply. Wo and KUA asserted that Applicants "failed to inform the BLNR that at that [October 2, 2015] conference, Judge Nishimura agreed to await the BLNR's decision on this pending motion and that her inclination was to allow substitution to take place." Wo and KUA further asserted that "it [was] perfectly appropriate for the BLNR to rule on the September 17, 2015 motion. And in fact, Judge Nishimura expects nothing less, as she made clear in chambers."

On November 4, 2015, Applicants filed a joint surreply. In their surreply, Applicants stated they "take strong exception to [Native Hawaiian Legal Corporation's] characterization of what transpired during the conference before Judge Nishimura" and "[a]t no time during the conference did Judge Nishimura express an 'inclination . . . to allow substitution to take place.'" Applicants further stated that Judge Nishimura indicated

"an <u>inclination to have the Board, rather than herself, render a decision</u> on the motion to substitute. She later clarified, however, that the question of whether the Board had jurisdiction to entertain the motion was not closed, and that the parties were free <u>to argue that issue to the Board</u>."

(Emphases added.)

Applicants attached declarations from Yvonne Izu (**Ms. Izu**) and Lisa Bail (**Ms. Bail**), attorneys for Haseko and UH, respectively. Ms. Izu declared that "[a]t no time during the Status Conference did Judge Nishimura indicate or even suggest an inclination on how she would rule if the Motion to Substitute were before her." Ms. Izu also declared that, while discussing jurisdiction of the Board and the circuit court, "Judge Nishimura at one point did indicate an <u>inclination to have the Board, rather than herself, render a decision</u> on the motion to substitute" and "[s]he later clarified, however, that the question of whether the Board had jurisdiction to entertain the motion was not closed, and that the parties were free <u>to argue that issue to the Board</u>." (Emphases added.) Ms. Bail's declaration did not mention what transpired at the status conference.

Mr. Frankel then filed a declaration responding to Applicants' surreply stating, "[i]n our conversation, Judge Nishimura said, 'I would grant it.' Although the word 'it'

could be construed as ambiguous, the context of the conversation was substitution."  Mr. Frankel also stated counsel for BLNR, Deputy Attorney General Linda Chow (**DAG Chow**), "attended that meeting and can offer her own interpretation of what Judge Nishimura said."

On December 16, 2015, the Board granted Wo's request to substitute KUA pursuant to HAR § 13-1-19, but denied Wo's request to expedite its decision indicating it would complete its review "in due course."

**4.     Circuit Court - Response to Suggestion of Death**

On January 6, 2016, 103 days after UH filed the suggestion of death in circuit court, Wo and KUA filed a "Response to [UH's] Suggestion of Death Upon the Record Under" HRCP Rule 25(a)(1).  Wo and KUA stated, "The sole purpose of this notice is to advise this Court that on December 16, 2015, the BLNR granted the motion to substitute KUA in place of [Wo] pursuant to HAR § 13-1-19. . . .  The case remains before the BLNR on remand to render its determination as to whether [a Supplemental EIS] is necessary."

**January 25, 2016** marked 120 days since UH filed its suggestion of death informing Judge Nishimura that Wo died,

which would trigger the dismissal of a case as to a decedent if no motion to substitute was filed under HRCP Rule 25(a)(1).[8]

### 5. BLNR - Decision

On February 27, 2017, the Board issued its "Findings of Fact, Conclusions of Law, and Decision and Order Re Request for Supplemental Environmental Impact Statement" denying Wo's request for a Supplemental EIS. In FOF 4, the Board found that "[t]he Remand Order remanded the case to the Board for the limited purpose of determining whether [a Supplemental EIS] should be prepared for the Kaloʻi Gulch drainage project. Except for the limited remand, the First Circuit Court retained jurisdiction over this case." In FOF 12, the Board further found, "After the death of . . . Wo, the First Circuit Court permitted the substitution of [KUA] in place of . . . Wo."

## D. Circuit Court - Return from Remand

### 1. Judge Nishimura

On March 16, 2017, a notice of BLNR's "Findings of Fact, Conclusions of Law, and Decision and Order Re Request for Supplemental Environmental Impact Statement" was filed in the circuit court.

---

[8] Actually, January 23, 2016 marked 120 calendar days since UH filed its suggestion of death. However, pursuant to HRCP Rule 6(a), if the last day of a time period falls on a Saturday, Sunday, or holiday, "the period runs until the end of the next day which is not a Saturday, a Sunday or a holiday." January 23, 2016 was a Saturday, thus the 120-day period would have been extended to Monday, January 25, 2016.

On April 24, 2017, 455 days after triggering an HRCP Rule 25(a)(1) dismissal based on UH's suggestion of death, the court minutes note "STATUS CONFERENCE HELD IN CHAMBERS. PTYS TO STIPULATE TO A BRIEFING SCHEDULE." Present were "Camille Kalama/For Appellant[,] Don Kitaoka/For City and County[,] Lisa Munger & Christine Terada/For UH[,] Yvonne Izu/For Haseko[,] Craig Iha/For DLNR[, and] William Wynhoff/For BLNR & DLNR[.]" (Formatting altered.) These minutes do not mention the substitution.

On June 20, 2017, a stipulation to supplement the certified record on appeal was filed.

### 2. Judge Hiraoka

On **July 11, 2017**, 533 days after triggering an HRCP Rule 25(a)(1) dismissal based on UH's suggestion of death, the case was reassigned from Judge Nishimura to the Honorable Keith K. Hiraoka.

On **July 20, 2017**, nine days after the reassignment from Judge Nishimura to Judge Hiraoka, UH moved to dismiss Wo's notice of appeal based on the failure to file a motion to substitute in the circuit court. UH reiterated Judge Nishimura's instructions to the Board on remand and asserted that "[i]n direct contravention of these express instructions, the Board granted a motion for substitution filed on behalf of KUA. The Board had no authority to grant the motion for

16

substitution, and its order affords no substitute for compliance with the requirements of HRCP Rule 25(a)(1)." (Footnote omitted.) UH further argued KUA was not a proper party for substitution because "Wo's standing was based on personal interests and rights." (Formatting altered.) UH asserted that the Board "incorrectly concluded, 'After the death of . . . Wo, the First Circuit Court permitted the substitution of [KUA] in place of . . . Wo.'"

The Honolulu Planning Department joined UH's motion to dismiss; the other applicants did not. KUA opposed UH's motion to dismiss.

On September 20, 2017, Judge Hiraoka held a hearing on the motion. The hearing began with Judge Hiraoka asking the Board's counsel, DAG Chow, about the Board seeking Judge Nishimura's permission to visit the site but not seeking permission to substitute parties:

> **[Judge Hiraoka:]** The counsel for the Land Board, why did the Board feel it was necessary to move the Circuit Court for leave to conduct a site visit?
>
> **[DAG Chow:]** Because at that time, there had been a previous site visit, I believe, and I may be confusing the first case with the second case, but there had been previous site visits that had been conducted, but the Land Board members who were, a lot of them were new, had not had an opportunity to see the site or were not familiar with the site, and they had wanted to be able to see that even if in connection with the limited purpose of the remand, and so because that would be taking in evidence that was not part of the prior contested case, we felt that it would be better to get leave of the court for that limited purpose.

17

> **[Judge Hiraoka:]** Based on the terms of the remand order?
>
> **[DAG Chow:]** Yes.
>
> **[Judge Hiraoka:]** Why did the Land Board not seek Circuit Court approval to substitute the parties upon [Wo's] impending death?
>
> **[DAG Chow:]** Because they thought that that was not taking in new evidence per se pertaining to the subject matter of the contested case but that it was more in terms of just a, not really a ministerial duty because, of course, there is a discretion that is exercised with that, but that it was ancillary to the subject matter of the contested case and that it was properly within the jurisdiction to do it.
>
> **[Judge Hiraoka:]** And the Board did consider evidence, didn't it?
>
> **[DAG Chow:]** The evidence it considered was based on the standing for the substitution but solely for that purpose.
>
> **[Judge Hiraoka:]** Yes, but the Board considered new evidence in the form of declarations from [Wo] and [Chang]?
>
> **[DAG Chow:]** Correct.

(Formatting altered.)

New counsel for Wo and KUA, Camille Kalama (**Ms. Kalama**), argued that there was "no dispute among the parties that [Judge Nishimura] was aware and had indicated that she would allow the Board to make a decision on" the motion to substitute. Ms. Kalama also requested that if the circuit court determined Wo should have followed HRCP Rule 25(a)(1), the time

18

"be enlarged for excusable neglect."[9]  Ms. Kalama requested the circuit court "allow time for us to satisfy that rule and not to impose such a draconian penalty . . . ."

Following a discussion with the parties on HRCP Rule 25, enlarging the time to file a motion based on excusable neglect, and transfer of rights, Judge Hiraoka ruled in UH's favor.  Judge Hiraoka (1) explained Wo's standing was based on his personal Native Hawaiian rights and Wo's counsel made a strategic decision to file a motion to substitute before the Board rather than file an HRCP Rule 25(a)(1) motion in circuit court, (2) denied the motion to enlarge the time to file an HRCP Rule 25(a)(1) motion to substitute with the circuit court, and (3) dismissed the appeal:

> The issue of organizational standing, the Court doesn't consider to be dispositive because even if [KUA] would have had standing to bring its own proceeding before the Board, . . . the case before the Court was one brought by [Wo] based on his personal Native Hawaiian rights.  When [Wo] passed away or shortly before, his then counsel made a strategic decision.  Rather than filing [an HRCP] Rule 25 motion in the Circuit Court which had jurisdiction over the

---

[9]  **HRCP Rule 6(b)** provides in relevant part:

> **Enlargement.**  When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done <u>where the failure to act was the result of excusable neglect</u>; but it may not extend the time for taking any action under Rules 50(b)[,] 52(b), 59(b), (d)[,] and (e) and 60(b) of these rules and Rule 4(a) of the Hawaiʻi Rules of Appellate Procedure, except to the extend and under the conditions stated in them.

(Emphasis added.)

entire case, he decided, he made the tactical decision to file a motion before the Land Board in a proceeding in which the final order had not been reopened and was specifically not reopened by the Circuit Court's temporary remand.

And so because it was a strategic or tactical decision, the Court does not believe excusable neglect can be shown, so that's why the Court is going to deny the request for a continuance under [HRCP Rule] 6(b) or any other authority to file [an HRCP] Rule 25 motion.

And the Court has struggled with the equities of this case because it does present very compelling equities, but the Court is constrained because the rule of law must be applied equally to all parties, and the issue of jurisdiction, subject matter jurisdiction, can be raised at any time, even on appeal for the first time, because it's not waivable.

The Court rules that the Land Board did not have jurisdiction to substitute [KUA] for [Wo] because the Circuit Court retained jurisdiction over the entire case. Since [an HRCP] Rule 25 motion was not filed in Circuit Court within 120 days of the filing of the suggestion of death, the appeal was abated, and therefore, the Motion to Dismiss is granted.

Ms. Munger, since you represent the prevailing party, could you please prepare the order, and the order need not recite Findings or Conclusions. It is not the Court's intent to make them. The Court just wanted to explain for everyone present the thought process that the Court went through in reaching this very difficult decision.

KUA timely appealed to this court.

## II.   STANDARDS OF REVIEW

"In [a] secondary appeal, this court applies the standards of HRS § 91-14(g) to determine whether the circuit court's decision was right or wrong." Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res., 136 Hawaiʻi 376, 388, 363 P.3d 224, 236 (2015).  HRS § 91-14(g) (Supp. 2016) provides:

> Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the

20

petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(Formatting altered.)

The denial of an HRCP Rule 6(b) extension is reviewed for an abuse of discretion. Kapahu v. Sam's Club West, Inc., 139 Hawaiʻi 36, 383 P.3d 139, No. CAAP-13-0006152, 2016 WL 4555856 at *4 (App. Aug. 31, 2016) (mem. op.). Abuse of discretion occurs if the court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

### III. DISCUSSION

In challenging the dismissal of Wo's case, KUA argues, *inter alia*, that (1) the Board could not have complied with the remand order without substituting Wo, and (2) if HRCP

21

Rule 25(a)(1) applied, the circuit court "abused its discretion by refusing KUA's request to enlarge time to substitute pursuant to HRCP [Rule] 6(b)."[10] (Formatting altered.) Applicants, on the other hand, contend that the circuit court's dismissal was proper because the Board lacked jurisdiction to substitute KUA in Wo's place and HRCP Rule 25(a)(1) applied.[11]

## A. The Board's consideration of the motion to substitute did not require dismissal of the appeal.

KUA explains that Judge Nishimura "indicated that the [Board] should decide that issue 'in the first instance.'" KUA argues that "[h]aving full knowledge then of the Motion to Expedite and Substitute still pending before the [Board], she could have objected, but did not object, to the [Board] acting on the motion and easily notified the parties then of any contrary reading of *her* limited remand order." Applicants argue

---

[10] We note that KUA mainly argues the circuit court failed to recognize BLNR's "primary jurisdiction." KUA also argues Applicants failed to serve nonparties with the suggestion of death. Because we vacate and remand for reasons discussed below, we need not address these arguments.

[11] Applicants also correctly point out that KUA's opening brief fails to comply with HRAP Rule 28(b).

In its points of error, KUA challenges specific findings of fact and conclusions of law, but does not address these findings and conclusions in the argument section of its opening brief. See HRAP Rules 28(b)(4) and (7). Instead, KUA appears to address these findings and conclusions in the context of its broader arguments. We address KUA's challenged findings and conclusions in the same manner.

In addition, though KUA's arguments are not presented as points of error, the appellate courts have "consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits where possible.'" Morgan v. Plan. Dep't, Cnty. of Kauaʻi, 104 Hawaiʻi 173, 180-81, 86 P.3d 982, 989-90 (2004) (citation omitted).

that "the Board lacked jurisdiction to substitute KUA for [Wo] during remand."  (Formatting altered.)

Under HRS § 91-14, the circuit court may affirm, reverse, or modify the Board's decision, or "remand the case with instructions for further proceedings[.]"  HRS § 91-14(g).  "Where a court remands a matter to an agency for the purpose of conducting a contested case hearing, the court may reserve jurisdiction . . . ."  HRS § 91-14(i) (Supp. 2016).

As HRS §§ 91-14(g) and (i) permit, Judge Nishimura remanded the case, instructing the Board to determine whether a Supplemental EIS was warranted based on the existing record without taking new evidence, while retaining jurisdiction over the appeal.

At this point, it is essential to recognize that this appeal is not about jurisdiction *per se* because Judge Nishimura explicitly retained jurisdiction over the case.  Instead, this appeal concerns the authority Judge Nishimura bestowed upon the Board on remand.  To determine whether the Board acted within its authority as permitted by Judge Nishimura, we consider all relevant circumstances.

Judge Nishimura remanded the case for the limited purpose of determining whether a Supplemental EIS was warranted, and ordered no new evidence be taken in making that determination.  Even when taking this into consideration, the

23

record before this court demonstrates that Judge Nishimura nonetheless permitted the Board to decide the motion to substitute.

Following an in-chambers conference with Judge Nishimura held seven days after UH filed its HRCP Rule 25(a)(1) suggestion of death, the parties actively litigated the substitution issue before the Board. Applicants filed an opposition to Wo's motion to substitute arguing lack of jurisdiction, Wo filed a reply, Applicants filed a surreply, and Mr. Frankel filed a declaration in response to the surreply. Based on the litigation before the Board surrounding the substitution issue, it may be reasonably inferred that the parties understood that the Board would hear the substitution issue and Applicants were free to argue the Board's authority in opposing the motion.

Ms. Izu's declaration supports this inference, as she stated, "Judge Nishimura at one point did indicate an inclination to have the Board, rather than herself, render a decision on the motion to substitute" and "[s]he later clarified, however, that the question of whether the Board had jurisdiction to entertain the motion was not closed, and that the parties were free to argue that issue to the Board." (Emphasis added.)

24

In addition, Applicants filed no HRCP Rule 25(a)(1) motion to dismiss during the 533 days between January 25, 2016 (120 days since the suggestion of death) and July 11, 2017 (reassignment order) while Judge Nishimura presided over the appeal. During those 533 days, the Board issued its decision that a Supplemental EIS was not warranted, the Board filed a notice of its decision with Judge Nishimura, Judge Nishimura held a status conference with all parties attending, and the parties stipulated to supplement the certified record. And, Applicants made no motion to dismiss based on HRCP Rule 25(a)(1).

Although Applicants took no action within those 533 days to request Judge Nishimura dismiss the appeal, it only took nine days for UH to request an HRCP Rule 25(a)(1) dismissal after the case was reassigned to Judge Hiraoka.

When considering Judge Nishimura set the parameters of the Board's review on remand *and* (1) the parties actively litigated the substitution issue before the Board, (2) Applicants did not request Judge Nishimura dismiss the appeal pursuant to HRCP Rule 25(a)(1) during those 533 days she presided over the appeal, and (3) deciding the Supplemental EIS issue innately required determining whether the issue was moot after Wo's death, it is reasonable to infer that the Board acted within the authority granted by Judge Nishimura.

Thus, as governed by the standard of review in HRS § 91-14(g), we hold that the Board deciding the motion to substitute did not require an HRCP Rule 25(a)(1) dismissal of the appeal.

**B.    The Board's substitution of parties was supported by good cause.**

KUA argues good cause existed to substitute it in Wo's place, while Applicants argue the good cause standard did not apply because the Board had no jurisdiction.

As discussed above, it is reasonable to infer the Board acted within the authority granted by Judge Nishimura.

Turning to good cause, HAR § 13-1-19 guides the Board's substitution of parties, providing that "[u]pon motion and for good cause shown, the board may order substitution of parties; provided that in case of death of a party, substitution may be ordered without filing of a motion."  "It is not possible to provide one definition of 'good cause,' as standards governing whether 'good cause' exists depend not only upon the circumstances of the individual case, but also upon the specific court rule at issue."  Chen v. Mah, 146 Hawaiʻi 157, 178, 457 P.3d 796, 817 (2020).  "Good cause depends upon the circumstances of the individual case, and a finding of its existence lies largely in the discretion of the officer or court to which the decision is committed."  Id. (cleaned up).

26

Here, while the decision on the Supplemental EIS was pending before the Board, Wo moved to substitute KUA in his place due to his mesothelioma diagnosis. KUA indicated it was willing and able to take Wo's place in the suit. Two days later, Wo passed away.

The substitution was fully litigated before the Board with Applicants arguing, *inter alia*, that the Board lacked jurisdiction to entertain the motion. The Board granted Wo's motion to substitute finding "good cause appearing therefrom[.]"

Considering Wo's death, KUA's willingness to substitute, and the environmental concerns raised regarding the impact of runoff into our oceans should Applicant's use permit be granted, good cause existed for the substitution. See Ka Paʻakai O Ka ʻĀina v. Land Use Comm'n, State of Hawaiʻi, 94 Hawaiʻi 31, 42, 7 P.3d 1068, 1079 (2000) (explaining "where the interests at stake are in the realm of environmental concerns, 'we have not been inclined to foreclose challenges to administrative determinations through restrictive applications of standing requirements'" (citation and brackets omitted)).

And by allowing the parties to fully litigate the motion to substitute, including whether the Board had the authority to entertain the motion, we cannot say the Board clearly exceeded the bounds of reason or disregard rules or principles of law or practice. Amfac, 74 Haw. at 114, 839 P.2d

27

at 26.  Based on HAR § 13-1-19, the Board did not abuse its discretion in substituting KUA in place of Wo.  See id.

Thus, as governed by the standard of review in HRS § 91-14(g), we hold that the Board's substituting KUA in Wo's place did not require dismissal of the appeal under HRCP Rule 25(a)(1).

**C.     The circuit court abused its discretion by denying KUA's request to enlarge time.**

Even if HRCP Rule 25(a)(1) applied in this case, we hold that the circuit court abused its discretion by denying Wo's request to enlarge the time for filing a motion to substitute with the circuit court based on excusable neglect.

"The 120-day time period provided for in HRCP Rule 25(a)(1) is subject to extension under HRCP Rule 6(b), at the discretion of the circuit court."  Kapahu, 2016 WL 4555856 at *4 (citation and brackets omitted).  HRCP Rule 6(b)(2) allows for enlargement of time to file a motion where the failure to timely file was the result of excusable neglect:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . .

(Emphasis added.)

"Courts generally have given Rule 6(b) a liberal interpretation . . . in order to work substantial justice

. . . ." Bagalay v. Lahaina Restoration Found., 60 Haw. 125, 141, 588 P.2d 416, 426 (1978) (applying HRCP Rule 6(b) to the HRCP Rule 25 time period, utilizing the framework for the substantially identical Federal Rules of Civil Procedure Rules 6(b) and 25(a)). "Ordinarily, the discretion of the court should be exercised to permit an extension of time, in the absence of a showing of bad faith on the part of the movant for substitution or undue prejudice to the other parties to the action." Id. (emphases added); see JK v. DK, 153 Hawaiʻi 268, 275, 278, 533 P.3d 1215, 1222, 1225 (2023) (explaining that excusable neglect in the context of default judgment is determined by considering "all relevant circumstances," and when considering undue prejudice, the court looks at "*prospective* prejudice"). "The burden is on the movant to demonstrate good faith and to show some reasonable basis for noncompliance with the rules." Bagalay, 60 Haw. at 141, 588 P.2d at 426.

When Wo's condition became apparent, the parties were litigating before the Board whether a Supplemental EIS was warranted. So, it was reasonable for Wo to request substitution from the Board. See generally, 60 Haw. at 141, 588 P.2d at 426. Doing so did not rise to the level of bad faith. See generally,

id. And Applicants did not claim prospective undue prejudice before the Board.[12]

As discussed above, Judge Nishimura set the parameters of what the Board could review on remand. Through the suggestion of death and the in-chambers conference, Judge Nishimura was aware of the pending motion to substitute before the Board. Judge Nishimura was also aware of the Board's substitution based on the notice of substitution and the Board's decision denying a Supplemental EIS. And Applicants did not move for an HRCP Rule 25(a)(1) dismissal in the 533 days between January 25, 2016 (120 days since the suggestion of death) and July 11, 2017 (reassignment order) that Judge Nishimura presided over the appeal.

Based on these circumstances, there was no evidence showing Wo's counsel engaged in bad faith. Rather, it appears Wo's counsel litigated the motion to substitute before the Board on a good faith belief that Judge Nishimura intended the matter be litigated before the Board.

The determination that the motion to substitute before the Board was strategic was insufficient to show bad faith or undue prejudice. Denying the request for an HRCP Rule 6(b)

---

[12] Applicants claim on appeal to this court that they "would have been prejudiced if the circuit court granted an extension to KUA pursuant to [HRCP] Rule 6(b)," but do not provide a valid basis to support this claim. (Formatting altered.)

enlargement of time to file a substitution motion without bad faith or undue prejudice was an abuse of discretion as it disregarded rules or principles of law to KUA's substantial detriment.

## IV. CONCLUSION

Based on the foregoing, we vacate the circuit court's October 3, 2017 order granting UH's motion to dismiss Wo's appeal and the November 7, 2017 Final Judgment, and remand this case to the circuit court for further proceedings consistent with this memorandum opinion.

DATED: Honolulu, Hawaiʻi, November 8, 2023.

On the briefs:

Summer L.H. Sylva,
Alan T. Murakami,
for Party in Interest-
Appellant Kuaʻāina Ulu ʻAuamo.

Carrie K.S. Okinaga,
University General Counsel,
Bruce Y. Matsui,
Office of the General
Counsel,
University of Hawaiʻi

and

Lisa Woods Munger,
Lisa A. Bail,
Christine A. Terada,
(Goodsill Anderson Quinn &
Stifel),
for Appellee-Appellee
University of Hawaiʻi.

/s/ Sonja M.P. McCullen
Presiding Judge

/s/ Jeannette H. Castagnetti
Circuit Court Judge

/s/ Paul B.K. Wong
Circuit Court Judge

Angela Fong,
Yvonne Y. Izu,
(Morihara Lau & Fong, LLP),
for Appellee-Appellee
Haseko (Ewa), Inc.

Donna Y.L. Leong,
Corporation Counsel,
Brad T. Saito,
Deputy Corporation Counsel,
for Appellee-Appellee City
and County of Honolulu,
Department of Planning and
Permitting.